W. SHARP, Judge.
In this proceeding, we have consolidated four appeals involving the Greater Orlando Aviation Authority (G.O.A.A.) and Guy Gannett Publishing Company (Gannett). G.O.A.A. appeals from the circuit court’s denial of its petition for certiorari review of the Lake County ^Commission’s approval (sitting as the Board of Adjustment) of permits[1] issued to Gannett to build an array of radio towers in Lake County. G.O.A.A. also appeals from the court’s denial of its motion for costs and its motion to discharge a bond required at an earlier injunction proceeding, which halted Gan-nett from constructing the towers. Gan-nett appeals from an order denying it attorney’s fees in the injunction proceeding. We reverse two but affirm the other rulings.[2]
This case involves such a thicket of overlapping authorities and regulations that even Brier Rabbit would have trouble penetrating and then extracting himself by an appeal. We do not intend to reach (in any regard) the merits of the controversy concerning Gannett’s right to build the tower array. We only decide here that the circuit court should have granted an appellate review of the Board’s decision affirming issuance of the building permits for the towers pursuant to Chapter 17 of the Lake County Code. The circuit court erred in dismissing the review petition on the ground that G.O.A.A. should have appealed the issuance of the building permits to the *653 Board of Building Examiners pursuant to Chapter 6, Lake County Code.
The record in this case shows that in 1989, Gannett purchased property in Lake County close to the west Orange County line, for the purpose of relocating its radio stations and tower array. Six towers were planned. It notified the F.A.A. in April, and later obtained its approval. In July, Gannett obtained a zoning change on the property and in September, Lake County approved the site plan and issued building permits for the first two towers. Gannett commenced construction.
Following shortly behind Gannett’s footsteps, G.O.A.A. found and selected (but did not buy) a site for a future airport in Orange County, West Site One, some two and one-half miles from Gannett’s planned tower array. It notified the F.A.A. in June of 1989. It also told the Lake County Planning Director in August about its plans for West Site One. Within thirty days after the building permits for the first two towers were issued, G.O.A.A. appealed the issuance of the permits, under Chapter 17 of the Lake County Code.
Chapter 17 requires the issuance of permits and variances for construction in Lake County near three existing airports in Lake County. The code also contains broader language which could be interpreted as requiring permits and variances for other future airports in Lake County, as well as airports built in neighboring counties. It was adopted to comply with Chapter 333, Florida Statutes, which requires local zoning bodies to protect airports and airspace, or be regulated by D.O.T. and the F.A.A.[3]
To halt the on going tower construction in Lake County, G.O.A.A. filed an injunction suit against Gannett, relying on Chapter 17. Chapter 17, section 17-45(c) of the Lake County Code, provides for an automatic stay when the issuance/non-issuance of a permit to build a structure, which might be hazardous to aviation, is in controversy. The court granted the automatic stay, pending review by the Lake County Commissioners, the final zoning board of appeal, under Chapter 17. Gannett appealed the injunction order to this court, but took a voluntary dismissal before the case was considered by the court on the merits.
Back in Lake County the administrative appeal proceeded before the Lake County Commissioners (sitting as the Board of Adjustment). It issued an order specifically finding that it had jurisdiction under Chapter 17 and that Lake County properly issued the tower building permits without requiring variances or special permits for aviation hazards. Implicitly, it held that Chapter 17 was applicable.
When this decision was appealed by way of certiorari review[4] to the circuit court, Gannett argued there as it does here, that G.O.A.A. should have filed its administrative appeal regarding issuance of the building permits under Chapter 6, Lake County Code, to the Board of Building Examiners. The circuit court agreed and dismissed the cause as untimely. We disagree.
Chapter 6 pertains solely to standards for buildings and construction in general. It regulates licensing contractors and provides minimum codes and standards for construction. Although the construction of the tower array necessarily includes regulation of minimum codes and standards for construction, G.O.A.A.’s attack on the permits has nothing to do with Chapter 6 subject matter.
G.O.A.A.’s claim is that Lake County failed to protect or consider the needed airspace for West Site One under Chapter 17. The need or lack of need for such protection in the form of a requirement for a variance was ultimately decided in Gannett’s favor essentially by inaction on the part of Lake County when the building permits issued without them. Logically, the proper review of this decision could only be made by the final administrative zoning authority under Chapter 17.
If a variance is required under Chapter 17, and is either granted or denied, that agency action would trigger the time to *654 take an administrative appeal. But, if no variance is required, the only administrative action which is taken is the issuance of the building permit without a Chapter 17 review. That is what occurred in this case. The administrative appeal was heard by the zoning body with jurisdiction under Chapter 17. That decision should now be reviewed on the merits by the circuit court.
We also hold that the circuit court properly denied Gannett an award of attorney’s fees pursuant to section 57.105 in the injunction suit. That statute requires the suit to be frivolous, i.e., there must be a complete absence of a justiciable issue of either law or fact, before an award can be made. The controversy below was complicated, and the statutes and rules involved were far from clear and simplistic. G.O.A.A.’s suits were not “frivolous.” See Whitten v. Progressive Casualty Insurance Co., 410 So.2d 501 (Fla.1982); Debra, Inc. v. Orange County, 445 So.2d 404 (Fla. 5th DCA 1984); Wright v. Acierno, 437 So.2d 242 (Fla. 5th DCA 1983).
Additionally, two conditions must be met before recovery of attorney’s fees and costs may be allowed against an injunction bond. The injunction at its inception must have been wrongfully issued, and the attorney’s fees must relate to the defeat or dissolution of the injunction. Merrett v. Nagel, 564 So.2d 229 (Fla. 5th DCA 1990). In this case, Chapter 17 contains an automatic stay which is self-executing, effective upon filing an appeal under Chapter 17. To enforce the automatic stay, G.O.A.A. was forced to bring the injunction case because Gannett ignored this provision. The court granted the injunction pursuant to Chapter 17 and the propriety of its ruling as well as the posting of the bond was not challenged on appeal. Thus, the law of this case establishes that the injunction was properly issued and the bond was properly required.
G.O.A.A. argues that it is, at this juncture, entitled to have the injunction bond required below discharged, and that it is entitled to an award of costs in the injunction case. It received the relief below that it sought: temporary injunction pending the administrative appeal. It did not challenge the requirement that it post a bond. Thus it is not entitled to costs. However, since the injunction has been dissolved,[5] there appears to be no reason to continue to require G.O.A.A. to post the bond. We have determined that Gannett is’ not entitled to any recovery of attorney’s fees or costs against the bond. Thus it should be discharged.
REVERSED in part; AFFIRMED in part.
COBB and DIAMANTIS, JJ., concur.

. In order to prevent the erection of structures dangerous to navigation, permits are required from the D.O.T. for the erection, alteration or modification of any structure which would exceed federal obstruction standards.

. We note that technically the first "appeal" should have been filed as a petition for certiora-ri review of the circuit court decision not to grant appellate review of the decision of a zoning body. Fla.R.App.P. 9.030(b)(2)(B). However, we elect to treat the “appeal” as an application for certiorari review, since the “appeal” was timely filed and no prejudice will be suffered by appellee. Fla.R.App.P. 9.040(c).

. 14 C.F.R. §§ 77.21, 77.23, 77.25, 77.28-.29.

. § 333.11, Fla.Stat. (1989); Fla.R.Civ.P. 1.630.

. The temporary injunction was granted pending the administrative appeal.